NELSON R. NORTON, Plaintiff in Error,

*vs.*

SILAS PECK, Defendant in Error.

ERROR TO THE RACINE CIRCUIT COURT.

Land, the private property of the citizen, cannot be taken for a public highway without compensation.

The several organized towns in this State are not municipal corporations in the sense in which that term is used in Sec. 2 of Art. 11 of the Constitution; they are regarded as *quasi* corporations.

Open, uncultivated and unenclosed lands owned by an individual, are private property, within the meaning of Sec. 13, of the 1st Article of the Constitution of this State, and cannot be taken for public use without just compensation therefor; and such property is protected by the Constitution, although the legislature may have made no provision for ascertaining and paying the damages accruing from the appropriation of such property to public use.

This was an action of trespass brought by Peck against Norton, before a justice of the peace of Racine county. The cause was certified to the County Court, on a plea of title. The declaration charged that the defendant with force and arms broke and entered into a certain close of said plaintiff, situated in the town of Burlington in said county, and with his servants and horses broke down the fence, dug up the earth and soil, trod down the grass, herbage and vegetables there growing, and doing other injuries to the damage of said plaintiff, of one hundred dollars.

The defendant filed four pleas to said declaration. The cause was transferred by stipulation of the parties to the Circuit Court. The questions presented for adjudication in this court are upon the third plea, which is substantially as follows:

That on the 23d day of August, A. D. 1850, six

free holders then residing in the said town of Burlington, wished to have a public highway laid out in said town, of the width of four rods, and therefore at the time and place last aforesaid, said six free-holders did make application in writing subscribed by them, to the supervisors of the said town, to wit: Nelson R. Norton and Henry Beck, who were then such supervisors; which application specified as nearly as practicable, the highway proposed to be laid out, and the several tracts of lands through which the same might pass. That upon such application the said supervisors, on the 24th day of August, 1850, made out notices subscribed by them in their official characters as such supervisors of said town of Burlington, and fixed therein a time and place that they would meet and decide upon such application to lay out said highway, and the defendant avers that such time was therein fixed and designated to be the 4th day of September, A. D. 1850, at 3 o'clock in the afternoon, and the place therein fixed and designated by them to meet, was at the tavern of M. L. Ayers, in said town of Burlington. That said notices did also specify, as near as practicable, the highway proposed to be laid out, and the several tracts of land through which the same might pass. * * * * Which said notices containing the matter aforesaid in substance and effect, was by said applicants at least five days previous to said 4th day of September, 1850, given to all the occupants of the lands through which said highway might pass; and was served personally on all the said occupants, and posted in three public places in said town. That the said supervisors met pursuant to and for the purpose designated in said ap-

plication and notices, and were satisfied that said notices had been duly posted, and served upon the occupants. That the supervisors of the said town did proceed to examine personally such highway, and did hear any reasons that were then and there offered for and against laying out said highway, and they concluded and were of the opinion that the public good. would be promoted by laying out said highway, and did decide upon said application to lay out such highway, and they caused an accurate survey thereof to be made, and made out a description of said highway so laid out and incorporated in an order which was on said fourth day of September made and signed by said supervisors. * * * * And said supervisors caused said order to be filed, and recorded in the office of the town clerk of the said town of Burling ton. Thereupon forthwith all applications, certifi‾ cates and other papers relating to the laying out of said road, were also filed in the office of said town clerk, as by law in such cases required. And the defendant avers that said highway was as aforesaid laid out through and across the close in plaintiff's decla ration mentioned, and it was not laid out through any orchard or garden, or through any building or any fixtures, or any erections for the purpose of trade, or manufactures, or any yard or enclosure necessary for the use and enjoyment thereof, or through any en. closed, improved or cultivated lands, nor was it laid out upon the line between two towns; neither had any owner or occupant of any lands through which said highway was laid, any fence in or upon or across said highway, and the defendant further says that within thirty days after the determination of said supervisors in laying out said highway, one Silas

June Term 1854.

Norton
vs.
Peck.

Peck, considering himself aggrieved by the determination of the said supervisors of said town of Burlington, in laying out said highway as aforesaid, appealed therefrom, and did also apply in writing to a justice of the peace of the town of Burlington, for the appointment of commissioners pursuant to the statute in such cases provided, to whom an appeal might be taken, which application briefly stated the ground upon which it was made, to wit : That said highway was unnecessary and not required by the public good, and was unjust to the said applicant and to others, owners of lots through which it runs, and are made comparatively useless by the laying out of said highway. That it is unjust to others, owners of village lots in the vicinity of said highway, who have bought and sold on streets laid out and recorded, and the running of the highway obliquely across the said streets and across said village plot was an injury and a damage to said owners, and that the laying out of said highway by said supervisors was a foregone conclusion, prejudged and decided upon before it was surveyed, and determined on in spite of the remonstrances of citizens, the damage to individuals, and the great expense it would inevitably be to the town, and that it was purely selfish in its inception, and that said appeal was brought to reverse entirely the determination of the supervisors as above therein set forth. That the commissioners applied for were appointed by the justice, satisfactory to the plaintiff, and affirmed the action of the supervisors. * * * That at the time of said affirmance the said highway was not laid out through any enclosed, cultivated or improved lands; nor was there any fence on said highway so laid out, but the said lands laid open and

common, uncultivated, unimproved and unenclosed. By means of which said several premises before and at and after the said several times in said declaration mentioned, there became, and was, and by right ought to have been a public highway into, through, over and along the said close in the said plaintiff's declaration mentioned, of which the said plaintiff had notice, for all persons to pass and repass from thence hitherto on foot and with cattle, carriages and horses, and servants at all times of the year, and at their free will and pleasure, and which they have done, and the defendant having occasion to pass, travel and repass over the same way, and with his servants, cattle and horses, went, passed, and repassed with said servants, cattle and horses, into, through, over and along the close, and by and along said highway then and there using the same, as he lawfully might for the cause aforesaid, and in so doing the said defendant, his said servants, cattle and horses unavoidably a little trod down, trampled upon, dug up and spoiled the soil grass and herbage, and vegetables in the said high-way of the said close. Also that one Maurice L. Ayres was the overseer of highways, residing in the road district in which said highway so laid out was situated, and it constituted a part of such district of which he was and still is overseer, and as such overseer his duty was to keep in order the highways within his said road district, and perform other duties appertaining to said office, as required by law.

And that this defendant was also a resident of said road district, and assessed to pay a highway tax therein. And for the purpose of paying his said highway tax, and pursuant to notices duly received from said overseer by defendant to appear and pay

his highway tax in labor in said district, and under the direction of said overseer and his supervision, appeared at several times in said highway to pay his said highway tax in labor, and to labor for others as their servant in paying their highway tax as directed by said overseer ; and for that purpose did enter, and with his servants, and cattle, and horses, broke down the said fence which had been wrongfully erected on and across the said highway after the same was laid out as aforesaid and used as such. And after the said appeal was determined, dug up the earth and soil in repairing said highway, and trod down the grass, and herbage and vegetables there growing within said highway, and took and carried said fence to a small and convenient distance and there left the same for the use of the said plaintiff, and doing no unnecessary damage to the said plaintiff on those occasions ; all of which was done by him as directed by said overseer of highways in repairing and keeping in order said highway, and for the payment of his said highway tax and the taxes of others, to be paid in said road district, all of which he lawfully might do, and which are the same supposed trespasses in the introductory part of this plea mentioned, and whereof the said plaintiff hath complained against him, and not other or different, and of this he is ready to verify, wherefore he prays judgment if the said plaintiff ought to have or maintain his aforesaid action thereof against him, &c.

To this plea the plaintiff demurred, and assigned the following, among others, as causes of demurrer. There is no allegation in the said plea that the necessity of said road was first established by a verdict of a jury.

It does not appear from the record set forth that any damages were awarded by the supervisors of the town of Burlington, sustained by the laying out of the said highway.

The demurrer was sustained by the court below, to reverse whose judgment this writ of error is brought·

*J. W. Carey*, for the plaintiff in error.

*H. T. Saunders*, for the defendant in error.

*By the Court*, WHITON C. J. We shall confine ourselves in the disposition of this case, to the matters presented by the first and third causes of demurrer, set out in the demurrer of the plaintiff below to the special plea of justification pleaded by the defendant.

The first cause of demurrer is, that there is no allegation in the plea, that the necessity of the road was first established by the verdict of a jury.

This objection to the plea is founded upon section two of article eleven of the Constitution of this State, which is in these words: " No municipal corporation shall take private property for public use against the consent of the owner, without the necessity thereof being first established by the verdict of a jury."

It is contended by the counsel for the defendant in error, that the plea of justification, pleaded by the plaintiff in error, in the court below, admits that the *locus in quo* was the property of the plaintiff, and that it was taken by the town of Burlington for the use of a highway; he contends that that use is a public use, and that the town of Burlington is a municipal corporation, within the meaning of the clause of the Constitution above recited. Since he concludes, that

as the plea does not allege the fact, that the necessity of the highway had been determined in manner pointed out in the Constitution, before the property was taken, it fails to show a justification of the trespass.

The question presented does not admit of an easy solution. That land which is taken and used for a common highway, is devoted to a public use, does not admit of a doubt, but it is not clear that the towns organized throughout the State for the ordinary purposes of township government, are municipal corporations in the sense in which those terms are used in the clause of the Constitution above quoted.

The legislature has provided (*Rev. Statutes, chapter* 12, *sec.* 1) that each organized town shall be a body corporate, and shall have power to purchase and hold real estate, and convey and dispose of the same; to appoint agents and attorneys; to sue and be sued; to make contracts and to do many other things which natural persons can do. These are powers which properly belong to corporations. On the other hand, some of the usual powers of corporations are wanting; they have no common seal with which to authenticate their acts; the mode in which they convey land is not that practiced by corporations usually. *Rumford vs. Wood,* 13 *Mass. R.* 193. They are called *quasi* corporations, or corporations *sub modo* only. *Angell and Ames on Corporations,* 19. We do not think that the legislature, by providing that they shall be bodies corporate, have very much assisted us in determining the question before us; that question is whether the terms "municipal corporations," as used in this clause of the Constitution, were intended to embrace the towns which, at the time when that in-

strument was adopted, were in existence in many parts of the State, with the same powers substantially that towns now possess. Some light is reflected upon this question, by section two, of article seven of the Constitution, which gives the legislature power to establish municipal courts, and provides that the jurisdiction of each court in their respective municipalities shall not exceed that of the Circuit Courts in their respective circuits, &c.

It will not be claimed by any one, we presume, that this clause of the Constitution gives the legislature power to establish municipal courts in the several towns in the State, which are organized for the ordinary purposes of township government. The power of the legislature to establish these courts, is, as we suppose, confined to cities, and perhaps to incorporated villages. These, as they exist in this State, correspond much nearer to the idea expressed by the term "municipal," than the ordinary towns organized in this country.

For these reasons we are of opinion, that our towns organized for the purpose of township government, are not municipal corporations in the sense in which those terms are used in the clause of the Constitution in question, and that consequently the first cause of demurrer is not sustained.

The third cause of demurrer is as follows: "It does not appear from the record set forth, that any damages were awarded by the supervisors of the town of Burlington, sustained by the laying out of said highway." This cause of demurrer to the plea is founded upon section thirteen, of the first article of our Constitution, which is as follows: "The property

of no person shall be taken for public use without just compensation therefor."

We think it insurmountable. We have intimated above, that there can be no doubt, that land taken and used for a common highway, is taken for a public use. This proposition we deem so clear that no argument is required to prove it. As the plea of justification does not set out any appraisal of damages, caused by taking the plaintiff's land for the use of the highway, nor any payment or compensation made or assessed for it in any way ; the only remaining question to be considered, is, whether open, uncultivated and unenclosed land, like that described in the plea, when owned by individuals, is private property, within the meaning of the constitutional prohibition in question.

Upon this question we have no doubt. If land thus situated is not so to be deemed, it would be difficult to prove that any property not in actual use by its owner, could be so deemed and taken. Wild, uncultivated land is taxed like other property ; it can be sold, and is conveyed by deed; it is frequently the subject of litigation in our courts, and trespasses upon it are punished by means of criminal prosecutions, and are the foundation of civil suits. All these proceedings are entirely inconsistent with the idea that such land is not property in the fullest sense of the term.

If our statutes make no provision for ascertaining and paying the damages which the owners of such property sustain by the taking of it for public uses, it rests with the legislature to supply the defect. Unless some mode exists, we do not see how the property can lawfully be taken.

In disposing of this case, we do not decide that where a highway is laid out and opened by the authorities of a town, actual payment in money of the damages sustained by those whose land is taken for the highway is necessary before the property is taken. The fact that all the taxable property of a town is liable for the damage sustained, and constitutes a fund to which the owners of the land may resort for compensation as soon as the amount of their damage is ascertained, may supercede the necessity of actual payment. But upon this subject no opinion is given.

We are compelled to hold the plea of justification bad, because it contained no averment that compensation was made to the plaintiff below, for his land taken for the highway, and no averment that any proceedings were taken by the authorities of the town to ascertain the value of the land, so that he could receive it.

The judgment of the court below must therefore, be affirmed.